UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 19-CR-6093-FPG

DECISION AND ORDER

TIMOTHY J. WEISKOPF,

      Defendant.

On May 14, 2020, the Court denied Defendant Timothy J. Weiskopf's first motion for compassionate release due to the COVID-19 Pandemic. *See* ECF Nos. 38, 45. On May 29, 2020, Defendant's counsel filed a renewed motion based on her discovery that Defendant has polycythemia vera.[1] ECF No. 47. Before the Court could rule on the renewed motion, counsel informed the Court that Defendant had tested positive for COVID-19. *See* ECF No. 49. Having considered Defendant's new circumstances, and for the reasons that follow, Defendant's renewed motion for compassionate release is DENIED.

This Court denied Defendant's first motion for compassionate release because "reduction of his term of imprisonment is inconsistent with the factors set forth in § 3553(a)." ECF No. 45 at 2. The Court reasoned that the gravity of his offense outweighed the undefined risk that he "faces from COVID-19." *Id.* at 7.

Two facts underlie Defendant's renewed motion: (1) he has learned that he has been diagnosed with polycythemia vera; and (2) he has contracted COVID-19. *See* ECF Nos. 47, 48. The Court concludes that these new circumstances do not entitle Defendant to relief.

---

[1] "Polycythemia vera is a slow-growing blood cancer in which the bone marrow makes too many red blood cells. These excess cells thicken blood, slowing its flow. They also cause complications, such as blood clots, which can lead to a heart attack or stroke." *Higgins v. Saul*, No. 18-01077, 2019 WL 7116356, at *1 n.2 (W.D. Ark. Dec. 23, 2019). The only evidence of Defendant's diagnosis comes from a one-page list of "Active Problems" from Defendant's prior correctional facility; there are no formal treatment notes, lab findings, or other medical evidence that shows the existence or extent of Defendant's disease. *See* ECF No. 52-1 at 8. Regardless, the Court proceeds on the assumption that Defendant does, in fact, have polycythemia vera.

Under 18 U.S.C. § 3582(c), compassionate release is only appropriate if, *inter alia*, the sentence reduction "is consistent with the factors set forth in section 3553(a)." *United States v. Lucas*, No. 15-CR-143, 2020 WL 2059735, at *2 (W.D.N.Y. Apr. 29, 2020). The Court recently weighed these factors when it imposed the original term of imprisonment in January 2020. *See* ECF No. 29. In the context of the present motion, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, No. 02-CR-114, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (discussing legislative history of provision). In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and "whether compassionate release would undermine the goals of the original sentence." *Id.* at *7.

One "extraordinary and compelling" circumstance justifying compassionate release is where the defendant suffers from a "serious physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *United States v. Epstein*, No. 14-287-1, 2020 WL 2537648, at *3 (D.N.J. May 19, 2020) (quoting U.S.S.G. § 1B1.13, Application Note 1(A)(ii)). That is essentially what Defendant asserts here. He alleges that "the BOP is not treating [his] polycythemia vera." ECF No. 52 at 3. He further asserts that in light of the risk of blood clotting due to the disorder, the BOP's failure to treat the polycythemia vera creates a greater risk of complications with respect to COVID-19. *Id.* at 8-9. The Court is not persuaded.

While it may be true that Defendant's facility had not been treating his polycythemia vera, this does not appear to have been a function of deliberate indifference, lack of resources, or the like, but due to mere oversight that Defendant had, in fact, been diagnosed with that disease. The

diagnosis appears in only one treatment note, from a different facility than the one at which Defendant is currently housed.  *See* ECF No. 47-1 at 49.  Indeed, Defendant himself was not aware of his diagnosis until counsel obtained his medical records during the present litigation.  *See* ECF No. 52 at 7.  It is unclear why no one, including Defendant, knew about this diagnosis.

Thus, there may have been a serious oversight, and the Court does not wish to downplay the error to the extent it occurred.  But Defendant has not established that, now that his diagnosis has come to light, his facility will not provide him with proper treatment.  There is no evidence that Defendant has even requested any sort of treatment, let alone that the facility has refused to provide it.  Nor has Defendant shown that, as a general matter, this sort of disorder cannot be adequately treated from within the prison environment.  Defendant states that treatment includes weekly blood removal, medication, and radiation.  *See id.* at 8.  Defendant does not argue, and the Court cannot discern, why his facility will not be able to secure such treatment for him.

Concerning his COVID-19 diagnosis, Defendant merely argues that because he "is not receiving adequate treatment for his cancer," he "cannot receive adequate treatment for COVID-19." *Id.* at 11.  Insofar as the Court has rejected the premise of Defendant's argument, his claim is not convincing.  Moreover, the government has provided evidence to show that Defendant is receiving adequate care for COVID-19.  Sarah A. Deese, health services administrator at FCI Elkton, states that inmates receive "24-hour medical coverage" and that if an inmate's condition "merits hospitalization, [he] will be transported to a local hospital."  ECF No. 51-1 at 16, 24.  The government also states that Defendant is in quarantine and is "being examined by medical staff twice daily."  ECF No. 51 at 2.  Defendant does not describe any additional treatment for COVID-19 that he should be receiving or that he could receive if he were released.  *See United States v. Zubkov*, No. 14-CR-773, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020) (inmate received

proper medical care after COVID-19 diagnosis, where he was placed in isolation, received daily attention from medical personnel, and facility was prepared to transfer him to a hospital "for more intensive care if necessary"); *Epstein*, 2020 WL 2537648, at *4-5 (same); *cf. United States v. Bomboy*, No. 19-CR-157, 2020 WL 2193443, at *2 (M.D. Pa. May 6, 2020) (denying motion for pretrial release due to COVID-19 where defendant was "receiving medical care for any medical issue while in prison" and "offered no plan for medical [care] should he be released").

Accordingly, the changed circumstances that Defendant identifies are no so weighty as to overcome the original § 3553 factors.[2]  As the Court stated in its prior order, Defendant's request "would not substantially satisfy the purposes of the original sentence, as it would fail to reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense." ECF No. 45 at 7 (internal brackets and quotation marks omitted).  This is not to say that the present circumstances—Defendant's exposure to COVID-19 or the alleged oversight regarding his blood disorder—are a fair or just component of his sentence.  Far from it.  But release to home confinement will not cure those prior lapses—Defendant will still have COVID-19 and polycythemia vera whether he is released or not.  Rather, what Defendant needs now is appropriate medical treatment, and there is no evidence before the Court that Defendant's facility cannot or will not provide such treatment moving forward.  Therefore, Defendant's renewed motion for compassionate release (ECF Nos. 47, 49) is DENIED.

IT IS SO ORDERED.

Dated: June 16, 2020
    Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[2] Defendant also suggests that, even if he recovers, he may be re-infected by COVID-19.  That is too speculative a ground on which to grant compassionate release.  *Accord Epstein*, 2020 WL 2537648, at *6.